# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>JOHN DOE subscriber assigned IP address 24.14.139.173,<br><br>        Defendant. | Case No. 1:13-cv-03648<br><br>Assigned to:<br>Hon. Matthew F. Kennelly<br>U.S. District Judge |

**ANSWER BY "JOHN DOE SUBSCRIBER" TO COMPLAINT; AFFIRMATIVE DEFENSES; COUNTERCLAIM FOR DECLARATORY RELIEF; AND DEMAND FOR JURY TRIAL**

### *ANSWER*

The anonymous person who pays the Internet bill associated with IP address 24.14.139.173, i.e., the "John Doe subscriber," who plaintiff has accused of being the defendant in this action (hereafter "Doe") by and through his[1] attorney, hereby answers the operative complaint in this action (ECF No. 1) as follows:

### Introduction

1.      This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

**ANSWER**:  Admitted.

2.      Defendant is a persistent online infringer of Plaintiff's copyrights. Indeed, Defendant's IP address as set forth on Exhibit A was used to illegally distribute each of the copyrighted movies set forth on Exhibit B.

**ANSWER**:  Doe denies that he is a persistent online infringer of Plaintiff's

---

[1] Per the Court's order granting leave to proceed anonymously, Doe is not identified by name; masculine pronouns are adopted for convenience, but Doe is not necessarily male.

copyrights. Doe lacks sufficient knowledge or information to admit or deny whether his IP address was used to download the content listed in Exhibit A and/or Exhibit B to the complaint, and on that basis denies this allegation.

3.     Plaintiff is the registered owner of the copyrights set forth on Exhibit B (the "Copyrights-in-Suit.")

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

## Jurisdiction And Venue

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation. However, assuming that the plaintiff does indeed have registered copyrights at issue, Doe admits that subject matter jurisdiction would be proper.

5.     The Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District, and therefore this Court has personal jurisdiction over the Defendant because (a) Defendant committed the tortious conduct alleged in this Complaint in this State, and (i) Defendant resides in this State and/or (ii) Defendant has engaged in substantial and not isolated business activity in this State.

**ANSWER**:  Doe admits that he resides in this judicial district and admits that personal jurisdiction is proper on this basis, but otherwise lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) the Defendant resides (and therefore can be found) in this District and resides in this State; additionally, venue is proper in this District

pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because each Defendant or Defendant's agent resides or may be found in this District.

**ANSWER**:  Doe admits that he resides in this judicial district and admits that venue is proper on this basis, but otherwise lacks sufficient knowledge or information to admit or deny the remaining allegations, and on that basis denies the remaining allegations.

## Parties

7.     Plaintiff, Malibu Media, LLC, is a limited liability company organized and existing under the laws of the State of California and has its principal place of business located at 409 W. Olympic Blvd., Suite 501, Los Angeles, CA, 90015.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

8.     Plaintiff only knows Defendant by his, her or its IP Address. Defendant's IP address is set forth on Exhibit A.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

9.     Defendant's Internet Service Provider can identify the Defendant.

**ANSWER**:  Doe denies this allegation.

## Factual Background

*I.     Defendant Used the BitTorrent File Distribution Network To Infringe Plaintiff's Copyrights*

10.     The BitTorrent file distribution network ("BitTorrent") is one of the most common peer-to-peer file sharing venues used for distributing large amounts of data, including, but not limited to, digital movie files.

**ANSWER**:  As to the description of BitTorrent, admitted.

11.     BitTorrent's popularity stems from the ability of users to directly interact with each other in order to distribute a large file without creating a heavy load on any individual source computer and/or network. The methodolgy [sic] of

BitTorrent allows users to interact directly with each other, thus avoiding the need for intermediary host websites which are subject to DMCA take down notices and potential regulatory enforcement actions.

**ANSWER**:  Admitted, except that Defendant lacks sufficient knowledge or information to admit or deny the implied allegation that BitTorrent does not utilize intermediary host websites and that BitTorrent is not subject to DMCA, and on that basis denies that portion of the allegation.

12.    In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces called bits. Users then exchange these small bits amongst each other instead of attempting to distribute a much larger digital file.

**ANSWER**:  Admitted, except that the small chunks that files are broken into are most typically called "pieces" in BitTorrent vernacular, not "bits."[2]

13.    After the infringer receives all of the bits of a digital media file, the infringer's BitTorrent client software reassembles the bits so that the file may be opened and utilized.

**ANSWER**:  Admitted, except that "bits" should read "pieces."

---

[2] Per the Merriam-Webster online dictionary: "Bit: a unit of computer information equivalent to the result of a choice between two alternatives (as *yes* or *no, on* or *off*)." (http://www.merriam-webster.com/dictionary/bit).  By contrast, for BitTorrent technology, a typical description of its functionality would be, "Each file to be distributed is divided into small information chunks called *pieces*."  (http://en.wikipedia.org/wiki/Torrent_file) (emphasis in original).  A BitTorrent "piece" would typically be made up of many "bits," with bits being the smallest unit of information that can be manipulated on a computer.  For further support of this subtle but potentially important semantic distinction, see Cohen, Braham (October 2002) "BitTorrent Protocol 1.0" (http://www.bittorrent.org/beps/bep_0003.html) (original document by BitTorrent's creator describing how BitTorrent protocol works); and http://en.wikipedia.org/wiki/BitTorrent#cite_note-Protocol1.0-6 ("The peer distributing a data file treats the file as a number of identically sized pieces, usually with byte sizes of a power of 2, and typically between 32 kB and 16 MB each. The peer creates a hash for each piece, using the SHA-1 hash function, and records it in the torrent file.")

14.     Each bit of a BitTorrent file is assigned a unique cryptographic hash value.

**ANSWER**:  Admitted, except that "bits" should read "pieces" and a hash is not necessarily "unique."

15.     The cryptographic hash value of the bit ("bit hash") acts as that bit's unique digital fingerprint. Every digital file has one single possible cryptographic hash value correlating to it. The BitTorrent protocol utilizes cryptographic hash values to ensure each bit is properly routed amongst BitTorrent users as they engage in file sharing.

**ANSWER**:  Doe denies that assignment of a cryptographic hash value for each piece will necessarily be "unique" in every instance, as this avoids the documented problem of what are typically called hash collisions.  It is possible (although rare) for two unrelated pieces to have an identical cryptographic hash value, as a matter of pure coincidence. Doe admits that the BitTorrent protocol uses hash values in connection with routing pieces to BitTorrent users but otherwise lacks information to respond to the second sentence and on that basis denies.  Finally, again, "bits" should read "pieces."

16.     The entirety of the digital media file also has a unique cryptographic hash value ("file hash"), which acts as a digital fingerprint identifying the digital media file (e.g. a movie). Once infringers complete downloading all bits which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate.

**ANSWER**:  Doe denies that assignment of a cryptographic hash value will necessarily be "unique" in every instance, but otherwise admits this allegation.

17.     Plaintiff's investigator, IPP Limited, established a direct TCP/IP connection with the Defendant's IP address as set forth on Exhibit A.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

18.    IPP Limited downloaded from Defendant one or more bits of each of the digital movie files identified by the file hashes on Exhibit A.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

19.    Each of the cryptographic file hashes as set forth on Exhibit A correlates to copyrighted movies owned by Plaintiff as identified on Exhibit B.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

20.    IPP Limited downloaded from Defendant one of more bits of each file has listed in Exhibit A. IPP Limited further downloaded a full copy of each file hash from the BitTorrent file distribution network and confirmed through independent calculation that the file hash matched what is listed on Exhibit A. IPP Limited then verified that the digital media file correlating to each file hash listed on Exhibit A contained a copy of a movie which is identical (or alternatively, strikingly similar or substantially similar) to the movie associated with that file hash on Exhibit A. At no time did IPP Limited upload Plaintiff's copyrighted content to any other BitTorrent user.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

21.    IPP Limited downloaded from Defendant one or more bits of each digital media file as identified by its hash value on Exhibit A. The most recent TCP/IP connection between IPP and the Defendant's IP address for each file hash listed on Exhibit A is included within the column labeled Hit Date UTC. UTC refers to Universal Time which is utilized for air traffic control as well as computer forensic purposes.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

22.     An overview of the Copyrights-in-Suit, including each hit date, date of first publication, registration date, and registration number issued by the United States Copyright Office is set forth on Exhibit B.

**ANSWER**:  Doe admits that the specified information, as alleged by plaintiff, is set forth on Exhibit B to the complaint, but lacks sufficient knowledge or information to admit or deny the truth of the information so asserted, and on that basis denies this allegation.

23.     IPP Limited has also engaged in enhanced surveillance of other digital media files being distributed by Defendant. The results of this more intensive surveillance are outlined in Exhibit C. The Copyrights-in-Suit are solely limited to content owned by Plaintiff as outlined in Exhibit B. Exhibit C is provided for evidentiary purposes only.

**ANSWER**:  Doe admits that the specified information, as alleged by plaintiff, is set forth on Exhibit C to the complaint, but lacks sufficient knowledge or information to admit or deny the truth of the information so asserted, and on that basis denies this allegation.  Further, plaintiff denies that Exhibit C "is provided for evidentiary purposes only."

24.     As the subscriber in control of the IP address being used to distribute Plaintiff's copyrighted movies, Defendant is the most likely infringer. Consequently, Plaintiff hereby alleges Defendant is the infringer. Plaintiff has included as Exhibit D a solicitation of exculpatory evidence in the event that Defendant chooses to deny the allegations.

**ANSWER**:  Doe is uncertain as to the meaning of the vague term "in control of the IP address".  Solely to the extent that this means Doe paid the bill on the Internet account and could therefore have terminated the account and discontinued Internet access, Doe admits this allegation.  Doe lacks sufficient knowledge or information as to the facts that supposedly establish that an infringement has even occurred, and on that basis denies the remainder of the allegation.  Assuming,

*arguendo*, that infringement did occur, Doe also denies liability. The final sentence about the superfluous Exhibit D is not an allegation that requires a response.

25.    Defendant is the only person who can be identified as the infringer at this time.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

### Miscellaneous

26.    All conditions precedent to bringing this action have occurred or been waived.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

27.    Plaintiff has retained counsel and is obligated to pay said counsel a reasonable fee for its services.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

### COUNT I
### Direct Infringement Against Defendant

28.    The allegations contained in paragraphs 1-27 are hereby re-alleged as if fully set forth herein.

**ANSWER**:  Doe answers each such paragraph as set forth above.

29.    Plaintiff is the owner of the Copyrights-in-Suit, as outlined in Exhibit B, each of which covers an original work of authorship.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

30.    By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

31.    Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

32.    As a result of the foregoing, Defendant violated Plaintiff's exclusive right to: (A) Reproduce the works in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the works' images in any sequence and/or by making the sounds accompanying the works audible and transmitting said performance of the works, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and (D) Display the copyrighted works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the works nonsequentially and transmitting said display of the works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

**ANSWER**:  Doe lacks sufficient knowledge or information to admit or deny, and on that basis denies this allegation.

33.    Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**ANSWER**:  Even if the facts of infringement and the liability of Doe were both hypothetically established by plaintiff, Doe would deny that any such infringement was willful.

[*The remainder of the complaint consists of a prayer for relief and a jury demand, responses to which are not required*.]

## *AFFIRMATIVE DEFENSES*

Doe, by and through his attorney, states the following affirmative defenses to the complaint:

## FIRST DEFENSE:

### Copyright Misuse

Plaintiff's claims are barred in whole or in part by the doctrine of copyright misuse.

## SECOND DEFENSE:

### Estoppel

Plaintiff's claims are barred in whole or in part by the doctrines of equitable and judicial estoppel.

## THIRD DEFENSE:

### Unclean Hands

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

## FOURTH DEFENSE:

### License

Plaintiff's claims are barred in whole or in part by licenses, express and implied, granted or authorized to be granted by Plaintiff or the copyright owner.

## FIFTH DEFENSE:

### One Satisfaction Rule

Plaintiff's claims for statutory damages, for each copyright at issue, are barred in whole or in part, to the extent that a statutory fee award has already been received by Malibu for that copyrighted work from settlement or judgments paid by other infringers who were involved in related infringement(s), via BitTorrent, of the same work or file.

## SIXTH DEFENSE:

### Innocent Intent

### (17 U.S.C. § 504(c)(2))

Plaintiff's Damages, if any, are limited because Doe was not aware and had no reason to believe that Doe's acts constituted an infringement of copyright.

## SEVENTH DEFENSE:

### No Volitional Conduct

Plaintiff's claims are barred in whole or in part because Doe did not engage in any volitional conduct.

## EIGHTH DEFENSE:

### Failure to Mitigate

Plaintiff's claims are barred in whole or in part because Plaintiffs have failed to mitigate their damages, if any.

## NINTH DEFENSE:

### Laches

Plaintiff's claims are barred in whole or in part by the doctrine of laches.

## TENTH DEFENSE:

### Waiver

Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

## ELEVENTH DEFENSE:

### Unconstitutionality of Statutory Damages

As applied to mass-scale BitTorrent copyright infringement cases, the statutory damages mandated by the Copyright Act which could be applied might be unconstitutional. When the plaintiff's actual damages are unlikely to hit four digits, but statutory damages can extend to the millions, this raises an issue of the deprivation of the Constitutional right to due process and equal protection.

## TWELFTH DEFENSE:
### Misuse by Others

Plaintiff's claims are barred in whole or in part because the harm alleged by plaintiff may have resulted from the misuse of technology by some person not reasonably expected by Doe.

## THIRTEENTH DEFENSE:
### Intervening Acts

The damages complained of may have been the result of intervening actions of others and were not proximately caused by the actions or omissions of Doe.

## FOURTEENTH DEFENSE:
### Knowledge, Consent, and Acquiescence

Plaintiff's claims are barred in whole or in part by plaintiff's knowledge, consent and acquiescence.

## FIFTEENTH DEFENSE:
### Fair Use

Plaintiff's claims are barred in whole or in part by the doctrine of fair use.

## SIXTEENTH DEFENSE:
### *De Minimis* Infringement

Plaintiff's claims are barred in that any copying or other violations of rights which may have occurred was *de minimus*.

## SEVENTEENTH DEFENSE:
### Insufficient Legal Process
(Fed. R. Civ. Proc. 12(b)(4))

Doe was served with a summons that states that the defendant is "John Doe," and which Does not include Doe's name. Although undersigned counsel was happy to cooperate on waiving *service* of process, it was not expected that the process itself would be deficient. Undersigned is appreciative of both the Court's and Malibu's indulgence in allowing Doe to proceed anonymously. However, Doe must insist

that the allegation that Doe, the ISP subscriber, *is the defendant* be deemed subject to Rule 11, effective as of the date service of the complaint, even arguably absent a signed pleading explicitly stating that fact.  In the alternative, if Malibu or its counsel objects to that position, Doe hereby reserves the right to move to dismiss the suit per Fed. R. Civ. Proc. 12(b)(4) and insist that a proper summons (which states Doe's true name) be issued, served and properly filed under seal.

## EIGHTEENTH DEFENSE:

### Failure to State a Claim Upon Which Relief Can Be Granted

(Fed. R. Civ. Proc. 12(b)(6))

Plaintiff's complaint fails to state a claim against Doe upon which relief can be granted.

## NINETEENTH DEFENSE:

### Failure to Join an Indispensible Party

(Fed. R. Civ. Proc. 12(b)(7))

The "initial seeder" (meaning the person who put the content up on BitTorrent in the first place) as well as others who may have assisted in any infringing download are not named as defendants in this action and may be indispensible parties within the meaning of Fed. R. Civ. Proc. 19.

//

## *COUNTERCLAIM FOR DECLARATORY RELIEF*

The anonymous person who pays the Internet bill associated with IP address 24.14.139.173, i.e., the "John Doe subscriber," who plaintiff has accused of being the defendant in this action (hereafter "Doe") by and through his attorney, hereby asserts a counterclaim against plaintiff Malibu Media, LLC ("Malibu"), as follows:

## Nature of the Case

1.     This is a declaratory relief cause of action, which seeks a declaration that four of the affirmative defenses raised by Doe in answering the underlying complaint—specifically: copyright misuse, estoppel, unclean hands, implied license, and the one satisfaction rule—are meritorious and that Doe is therefore not liable to Malibu for infringement.

## Parties

2.     Doe, the defendant in the underlying action and the counter-claimant here, is an individual who has been sued by Malibu for copyright infringement.  He resides in this judicial district.

3.     Doe is informed and believes and on that basis alleges that Malibu is a limited liability company organized under the laws of the state of California, with its principal place of business in Los Angeles, California.

## Jurisdiction and Venue

4.     Subject to Doe's affirmative defenses and denials above, Doe is informed and believes and on that basis alleges that this Court has jurisdiction over the subject matter pursuant to plaintiff's allegation of copyright infringement, which is a federal question (assuming the plaintiff has registered copyrights).  Further, the counter-claim is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., and the Copyright Act, 17 U.S.C. § 101, *et seq*. The Court has subject matter jurisdiction over the counterclaim pursuant to 28 U.S.C. §§ 1331 and 1338.

5.     Personal jurisdiction lies in this judicial district because Doe resides here and Malibu has filed numerous infringement suits here, including the

underlying action.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Doe resides here and Malibu has filed numerous infringement suits here, including the underlying action.

## Background Facts Relevant to Affirmative Defenses and Counterclaim

  a. <u>Section 2257</u>

7. Malibu produces and/or distributes pornographic movies, most of which are available through the X-Art.com website. The movies typically feature young-looking people engaged in actual, graphic sexual intercourse.

8. Malibu's movies, including the titles at issue in this lawsuit, are subject to the detailed record-keeping requirements of 18 U.S.C. § 2257 ("Section 2257") a law designed to prevent child pornography by ensuring that porn producers keep and maintain records confirming that performers engaging in sexual conduct are at least 18 years old. Violation of Section 2257 is a crime, punishable as a felony.

9. In order to comply with Section 2257 requirements, most smaller porn producers utilize professional, third-party custodians of records. Larger porn companies sometimes do have specific people on staff that spend substantial time ensuring in-house compliance with the Section 2257's many requirements.

10. Recently, the Free Speech Coalition, an adult industry trade group, has campaigned (so far unsuccessfully) in the courts to have all or part of Section 2257 declared unconstitutional. In legal proceedings before Judge Baylson in the Eastern District of Pennsylvania, a variety of adult industry witnesses testified in 2013 to how very difficult it is to consistently and fully comply with Section 2257 requirements. *See Free Speech Coalition, Inc. v. Holder*, E.D. Pa. No. 2:09-cv-4607, ECF No. 229 (July 18, 2013) (Memorandum: Findings of Fact and Conclusions of Law) (summarizing testimony).

11. Per the legal notice on the X-Art.com website as of November, 2013, Malibu, which is a relatively small porn company (although a prolific copyright

litigant), does not utilize a professional, third-party custodian of records. Rather, the custodian of records is identified as "B. Field, 409 W. Olympic Blvd., Suite 501, Los Angeles, CA 90015." Presumably this means Brigham Field, who is Malibu's founder.

12.     Doe is informed and believes and on that basis alleges that record-keeping requirements for on-camera pornography performers are much less stringent for talent overseas than in the U.S.

13.     Doe is informed and believes and on that basis alleges that the problem of unscrupulous agents, managers, talent scouts and sometimes the performers themselves providing incomplete, insufficient or even fake identity documents is particularly acute with female performers from former-Soviet-block countries, among other problem areas.

14.     Doe is informed and believes and on that basis alleges that many of the models performing sex acts in Malibu Media's copyrighted movies on X-Art.com appear to be young females, some of whom are marketed as "teens," and a substantial number of whom hail from former-Soviet-block countries, such as the Czech Republic, Slovakia, Russia, Hungary, and Romania.

15.     Doe is informed and believes and on that basis alleges that Malibu has in the past attempted to skirt and ignore work visa requirements for foreign female performers it brought to the US to work on its pornographic film shoots occurring in Miami and Los Angeles.

16.     Doe is informed and believes, based on the allegations in paragraphs 7 to 15 above, and on that basis alleges, that the Section 2257 records for certain of the pornographic movies at issue in the complaint in this action may be incomplete, deficient, or even fabricated.

      b.     <u>IPP and Guardaley</u>

17.     Doe is informed and believes and on that basis alleges that Malibu's purported technical expert is described variously as "IPP Limited," and "IPP

International UG."  This company is responsible for monitoring BitTorrent for infringement of its client's works (including for Malibu), and for collecting the computer forensic evidence that serves as the basis for this suit.  IPP is actually nothing more than the continuation and alter-ego of a German company called Guardaley.

18.    Doe is informed and believes and on that basis alleges that Guardaley was accused of wrongdoing in a German court and that Guardaley was found to be initially seeding its clients' content onto BitTorrent, i.e., operating a "honey pot".  Doe is not clear on the specifics of Guardaley's wrongdoing or what the court specifically found, but is aware that there are documents, in German, relating to this issue.

19.    Doe is informed and believes, based on the allegations in paragraphs 17 to 18 above, and on that basis alleges, that IPP Limited is responsible for initially seeding some of Malibu's content onto BitTorrent in the first place.

       c.      Malibu's Nationwide Litigation Campaign

20.    Malibu has filed over 1,000 lawsuits nationwide, against thousands of John Doe defendants, all of which essentially allege the same thing in the same way, namely infringement of various Malibu pornographic copyrights via peers[3] using BitTorrent.

21.    Throughout 2012, Malibu typically tried to join as many defendants as possible into single cases in given judicial districts (so as to pay as few filing fees as possible), and in such cases they alleged that all of the peers in who were involved in downloading a given file as part of the same "swarm,"[4] were jointly and severally liable for the resulting infringement.

22.    Doe is informed and believes and on that basis alleges that the

---

[3] In BitTorrent vernacular, a "peer" is a person who has a BitTorrent client installed on his or her computer such that he or she is sharing files with other peers who are also using BitTorrent.
[4] In BitTorrent vernacular, "swarm" means the particular peers using the BitTorrent protocol who happen to be downloading the same particular file.

particular file at issue in this lawsuit, which Doe is alleged to have downloaded, was previously the subject of prior Malibu litigation in some other court.

23.    Doe is informed and believes and on that basis alleges that the copyrights in suit in this lawsuit have been the subject of prior Malibu litigation in some other court.

24.    Does is informed and believes and on that basis alleges that the particular IP address Malibu complains of in this action, which was used to purportedly identify the defendant, has been the subject of prior Malibu litigation in some other court.

25.    Doe is informed and believes and on that basis alleges that Malibu's technical expert, IPP, has been engaged in the monitoring of BitTorrent downloads for Malibu, meaning searching out and logging the IP addresses which download Malibu content, and also then "monitoring" infringing IP addresses to see what else those people are downloading, for at least two years.

26.    Essentially, Malibu has made a business model out of pornographic copyright infringement litigation.  Malibu, under the overall direction of plaintiff's law firm Lipscomb, Eisenberg & Baker, of Miami, and with day-to-day assistance from regional local counsel (a category that includes counsel of record in this case), has been systematically suing John Doe defendants for infringement, and then seeking settlements, on a scale seldom seen in the history of federal litigation.

27.    Doe is informed and believes and on that basis alleges that Malibu typically insists on receiving settlement payments from John Doe defendants of at least a few thousand dollars.  In 2013, since Malibu started filing single defendant cases, Malibu's typical settlement demands are now closer to $10,000 per defendant.

28.    There is ample evidence that Malibu has already concluded hundreds if not thousands of "settlements" with various John Doe defendants across the country, many of whom are accused of downloading not only the exact same copyrighted movies, but, often, also the exact same specific file containing one or more movies.

29.    Accordingly, if one views Malibu's BitTorrent litigation enterprise as a whole, it is likely that Malibu has by now received enough money in settlements and default judgments that it has reached the statutory damage maximum for many of the copyrights it accuses BitTorrent users of infringing.

### Counterclaim for Declaratory Judgment

30.    Doe re-alleges and incorporates by reference paragraphs 7 to 29 above as though fully set forth herein.

31.    An actual controversy under 28 U.S.C. § 2201 has arisen and now exists between Doe and plaintiff/counter-defendant Malibu relating to Does liability to Malibu for infringement, given the affirmative defenses asserted by Doe to the underlying complaint.

32.    In the underlying complaint, Malibu previously filed suit in this Court alleging that Doe infringed plaintiff's copyrights.  By answer, Doe asserted certain affirmative defenses to the complaint, which included copyright misuse, estoppel, unclean hands, and the one satisfaction rule.

33.    Doe now seeks a judicial determination that his affirmative defenses to the underlying complaint of copyright misuse, estoppel, unclean hands and the one satisfaction rule are meritorious and that Doe is therefore not liable to plaintiff for copyright infringement.

34.    Such determinations by this Court would be helpful not only in resolving the instant dispute between Doe and Malibu, but these are broader issues affecting thousands of similarly situated defendants being sued by Malibu.

### Prayer for Relief

WHEREFORE, Doe requests entry of judgment in his favor on both plaintiff's underlying complaint and on the counterclaim for declaratory relief and prays that the Court:

A.    Dismiss Malibu's underlying complaint with prejudice;

B.    Declare that Doe is not liable to Malibu for infringement and that

Malibu takes nothing;

        C.     Find that some of the Section 2257 records for the movies at issue in the underlying complaint are incomplete, deficient or fake.  Doe also seeks a holding that this finding is sufficient to sustain an affirmative defense to infringement for Doe of copyright misuse, estoppel and/or unclean hands.

        D.     Find that Malibu and/or its agent IPP are responsible for seeding some of Malibu's content onto BitTorrent.  Doe also seeks a holding that this finding is sufficient to sustain an affirmative defense to infringement for Doe of copyright misuse, estoppel and/or unclean hands.

        E.     Find that for the purposes of awarding statutory damages under the Copyright Act, this case is related to all the other Malibu cases, nationwide, involving the same copyrights, or, in the alternative, involving the same exact file/swarm.  For each copyright at issue in the underlying complaint, Doe seeks a finding calculating the amount of settlement and judgment money Malibu has received, nationwide, that is attributable to that copyright (or file/swarm).  Finally, Doe also seeks a holding that his potential liability to Malibu for statutory damages should be reduced by the amount of other Malibu settlement and judgment payments also attributable to BitTorrent infringement of the same copyright, or file/swarm, per application of the one satisfaction rule to this new context.

        F.     Award Doe his costs and attorneys fees to the extent allowed by law;

        G.     Award Doe such other relief as is just and equitable.

### DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Doe demands a trial by jury on all issues so triable.

Respectfully submitted,

DATED:   November 13, 2013


**THE PIETZ LAW FIRM**

*/s/ Morgan E. Pietz*


Morgan E. Pietz (Cal. Bar No. 260629)
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone: (310) 424-5557
Facsimile:  (310) 546-5301

*Attorneys for Defendant John Doe ISP Subscriber*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using ECF, which will send notification of such filing to all attorneys of record.

/s/ Morgan E. Pietz
Morgan E. Pietz


Respectfully submitted,

DATED:   November 13, 2013