**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MALIBU MEDIA, LLC, | Case No. 1:13-cv-03648 |
| Plaintiff, | Assigned to: Hon. Matthew F. Kennelly |
| v. | |
| JOHN DOE, | |
| Defendant. | |

**DEFENDANT'S CONSOLIDATED OPPOSITION TO PLAINTIFF'S MOTIONS TO DISMISS COUNTERCLAIM AND STRIKE AFFIRMATIVE DEFENSES**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ 2

TABLE OF AUTHORITIES .......................................................................................... 3

I. INTRODUCTION AND SUMMARY ....................................................................... 5

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................... 11

    (a) Operative Allegations re: Section 2257 ............................................................ 13

    (b) IPP and Guardaley .......................................................................................... 13

    (c) Malibu Media's Ongoing Attempts to Receive Multiple Statutory Damage
    Awards, Presumably in Excess of $150,000, for "Swarm" Infringement
    Between Peers It Claimed Were Logically Related ......................................... 14

III. ARGUMENT IN OPPOSITION ............................................................................. 15

    (a) Legal Standards for Motions to Dismiss and Motions to Strike ....................... 15

    (b) Provisions of Section 2257 ............................................................................... 16

    (c) Malibu Media Has Failed to Meet its Burden of Showing the Total
    Implausibility of the Equitable Defenses Asserted by Defendant ..................... 19

        (1) The Section 2257 Defense Should Be Distinguished From Other
        Morality/Illegality Defenses That Have Been Rejected In The Past ....... 20

        (2) The Section 2257 Defense Fits Under the Rubric of Unclean Hands,
        And/Or Copyright Misuse ....................................................................... 22

            (A) *Unclean Hands: Section 2257 Violations Are Serious
            Transgressions Directly Related to the Copyrights In Suit* ...... 22

            (B) *Copyright Misuse: The Public Policy Embodied In The Grant
            Of A Copyright Cannot Abide Monetization Of Child
            Pornography* .......................................................................... 24

        (3) Defendant Also Raises Valid Defenses of Estoppel And/Or Implied
        License To The Extent Malibu's Agent IPP Was Involved In Seeding Or
        Facilitating The Download Of Plaintiff's Content On BitTorrent ........... 24

        (4) The One Satisfaction Issue Is A Limited Defense Capping Potential
        Statutory Damages; The Court Should Resolve The Issue After
        Discovery And Proper Motion By Defendant, Not By Dismissal ........... 25

    (d) The Affirmative Defenses Raised In The Counterclaim Could Be Tried
    Separately ........................................................................................................ 26

    (e) None Of The Affirmative Defenses Should Be Stricken .................................... 27

IV. CONCLUSION ...................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

15 U.S.C. § 1052(a) ................................................................................................................ 5

28 C.F.R. 75 ................................................................................................................... 8, 19

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) ................................................................ 14

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) ........................... 14

*Bassiri v. Xerox Corp.*, 292 F. Supp. 2d 1212, 1220 (C.D. Cal. 2003) ............................ 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................. 14

*Broam v. Bogan*, 320 F3d 1023, 1028 (9th Cir. 2003) .................................................... 15

*California v. Freeman*, 488 U.S. 1311 (1989) .................................................................... 5

*Coleman v. ESPN, Inc.*, 764 F. Supp. 290, 295 (S.D.N.Y. 1991) ...................................... 9

*Devils Films, Inc. v. Nectar Video*, 29 F. Supp. 2d 174 (S.D.N.Y. 1998) ...................... 22

*Dream Games of Arizona, Inc. v. PC Onsite,* 561 F.3d 983, 990–94 (9th Cir. 2009) ............. 19, 21

*Dunlop-McCullen v. Local 1-S AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir.1998) ........................... 23

*Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012)……………………………passim

*Free Speech Coalition, Inc. v. Holder*, 2013 U.S. Dist. LEXIS 100165 (E.D. Pa. July 18, 2013)

   (E.D. Pa. No. 2:09-cv-4607-MMB, ECF No. 229) ("*Free Speech Coal. II*") ................. 7, 17, 18

*Free Speech Coalition, Inc. v. Holder*, 677 F.3d 519, 533 (3d Cir. 2012) .................................... 18

*Free Speech Coalition, Inc. v. Holder,* 729 F. Supp. 2d 691, 746 (E.D. Pa. 2010) ("*Free Speech*

   *Coal. I*") ................................................................................................................. 18

*Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1165  (C.D. Cal. 2002) ........................................... 14

*Jartech, Inc. v. Clancy*, 666 F.2d 403 (9th Cir. 1982) ........................................................ 5, 19, 20

*Katherine G. v. Kentfield Sch. Dist.*, 261 F Supp2d 1159, 1186  (N.D. Cal. 2003) ................. 10, 25

*Malibu Media, LLC v. John Doe,* S.D. Cal. No. 12-cv-1054, ECF No. 15, 11/27/12 .................... 13

Martinetti v. Maguire, 16 F. Cas. 920 (C.C.Cal. 1867) (No. 9,173)................................................. 19

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, Ltd., 518 F. Supp. 2d 1197, 1223 (C.D. Cal.

   2007)........................................................................................................................ 22

*Mitchell Bros. Film Group v. Cinema Adult Theatre*, 604 F.2d 852, 863 (5th Cir. 1979) ............. 19

*Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152  (C.D. Cal. 2003) .................... 15

*Reiter v. Cooper*, 507 US 258, 265 (1993) ............................................................................ 10, 25

*Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 516-517 (N.D. Cal. 2004).......................................... 15

*Saxon v. Blann*, 968 F.2d 676, 680 (8th Cir. 1992) ................................................................... 8

*See Devils Films, Inc. v. Nectar Video*, 29 F. Supp. 2d 174 (S.D.N.Y. 1998) ................................ 6

*See* Lowell v. Lewis , Fed. Cas. No. 8568 (C.C. Mass. 1817) ......................................................... 6

*Survivor Productions LLC v. Fox Broadcasting Co.*, 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001).......................................................................................................................................22

Tol-O-Matic, Inc. v. Proma Product-und Marketing Gesellschaft M.b.H ., 945 F.2d 1546, 1552 (Fed. Cir. 1991) ......................................................................................................................... 6

*TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462 (1993) ................................... 22

## Statutes

18 U.S.C. § 2257.........................................................................................................8, 15, 16, 22

## Rules

Fed. R. Civ. Proc. 12(f)................................................................................................................ 15

Fed. R. Civ. Proc. 8 (c)(2)........................................................................................................... 15

## Treatises

Nimmer on Copyright ..............................................................................................9, 23, 24, 25

## Constitutional Provisions

U.S. Const. amend. I .................................................................................................................... 5

U.S. Const. art. I, § 8, cl. 8.......................................................................................................... 5

## I.  INTRODUCTION AND SUMMARY

The so-called "Copyright Clause" of the U.S. Constitution empowers Congress, "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."  U.S. Const. art. I, § 8, cl. 8.  Under cover of the First Amendment, an otherwise illegal commercial sex act (*i.e.*, pimping/prostitution) can be transformed into protectable speech (*i.e.*, pornography) when the act is video-recorded and distributed to the public for profit.  *See* U.S. Const. amend. I ("Congress shall make no law. . . abridging the freedom. . . of the press . . .); *California v. Freeman*, 488 U.S. 1311 (1989).

However, neither copyright law nor the First Amendment necessarily guarantee the right to have federal courts enforce a monopoly protecting pornographic videos, ***if*** the material was ***unlawfully*** produced.

The extreme example of child pornography illustrates that copyright protection must have some kind of substantive limit.  Imagine a convicted child molester, in jail for life with nothing to lose, who videotaped the crime and then attempts to register a copyright depicting sex crimes on a minor and sue for infringement thereof. The Copyright Office does not examine for content or substance so, as long as the registration application was procedurally correct, the registration would presumably be issued as a matter of course (notwithstanding a possible referral to law enforcement, if an astute functionary at the Office or Library of Congress happens to notice that the model/victim looks particularly young).  Further, no provision of the Copyright Act itself would explicitly prevent such a suit—even if the work is legally "obscene." *See Jartech, Inc. v. Clancy*, 666 F.2d 403 (9th Cir. 1982) (". . .this court does not agree that obscenity constitutes a defense to a copyright claim. . .") *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012)

(citing *Jartech*). In trademark law, the Lanham Act explicitly refuses registration if the nature a proposed mark "[c]onsists of or comprises immoral, deceptive or scandalous matter." 15 U.S.C. § 1052(a). Similarly, patent law has a "moral" component to utility, which has occasionally been asserted as a basis to refuse registration, and which has more recently been the subject of renewed vitality in the bioethics realm. *See Lowell v. Lewis* , Fed. Cas. No. 8568 (C.C. Mass. 1817) (Story, J.), *quoted in Tol-O-Matic, Inc. v. Proma Product-und Marketing Gesellschaft M.b.H* ., 945 F.2d 1546, 1552 (Fed. Cir. 1991); *see also* "U.S. Patent and Trademark Office, Facts on Patenting Life Forms Having a Relationship to Humans," Apr. 1, 1998[1] (explaining the PTO's reasons for refusing registration to an application for creation of a part-human "chimerical" monster based on public policy and morality grounds). By contrast, the normative limits of copyright law are less clearly defined.

The point of the copyrighted child pornography example is that the doctrines at issue in the instant motions—unclean hands, misuse of copyright, equitable estoppel, among others—are the equitable bulwarks that protect copyright law from abuse by the unlawful and the immoral. *See Devils Films, Inc. v. Nectar Video*, 29 F. Supp. 2d 174 (S.D.N.Y. 1998) ("Given the clearly criminal nature of plaintiff's operation, it is self-evident that the Court should not use its equitable power to come to plaintiff's assistance and should invoke the doctrine of unclean hands. . .").

If one allows that a court has the discretion to decline to enforce a copyright to child pornography (because of the plaintiff's unclean hands, etc.; whichever the equitable theory) then it is only a small leap to one of defendant's main arguments here. If any of the sexually explicit films featuring young-looking girls at issue here (*see* Counterclaim ¶¶ 7, 14) were feloniously produced in violation of the strict record-keeping requirements of 18 U.S.C. § 2257 *et seq*. and its

---

[1] Available here: http://www.uspto.gov/web/offices/com/speeches/98-06.htm

related regulations at 28 C.F.R. 75 *et seq.* ("**Section 2257**"), then the Court should ***not*** enforce copyright monopolies for such films.

A Section 2257 defense to copyright infringement would be entirely consistent with the First Amendment because Section 2257 is "content-neutral and survived intermediate scrutiny, because [it is] a narrowly tailored means for Congress to effectuate its goal of combating child pornography." *Free Speech Coalition, Inc. v. Holder*, 2013 U.S. Dist. LEXIS 100165 (E.D. Pa. July 18, 2013) (E.D. Pa. No. 2:09-cv-4607-MMB, ECF No. 229) ("*Free Speech Coal. II*"). The public's interest in combating child pornography can scarcely be understated and Section 2257 has survived spirited and prolonged constitutional challenges by the adult industry, as an appropriate means of furthering this very significant and important goal. *See id.* In the same way that the Court should not enforce a copyright for actual child pornography, the court should similarly decline to enforce copyrights for movies produced in violation of criminal rules that are narrowly-tailored to help combat the same problem. While pornography may qualify as speech and thus be saved from being prostitution by virtue of the First Amendment, that does not mean the court needs to affirmatively enforce a copyright monopoly for a work that was feloniously produced in violation of a content-neutral criminal law.

The substantive arguments Malibu Media raises about why the main equitable affirmative defenses raised by defendant should supposedly fail ignore key factual allegations and law, and occasionally miss the point entirely.

For example, on copyright misuse, defendant has alleged that Malibu Media is misusing its copyright by seeking to enforce copyright monopolies in violation of Section 2257, which would certainly be against "the public policy embodied in the grant of a copyright." It seems highly doubtful Malibu Media's six to twenty minute "vignettes" featuring graphic footage of young

people having sexual intercourse, is the kind of "Progress of Science and useful Arts" that the framers of the U.S. Constitution had in mind. It seems even more unlikely that the framers would have intended for the grant of a copyright to trump the strong public policy in favor of a law, punishable as a felony (*see* 18 U.S.C. § 2257(i)), designed to help combat child pornography.

Similarly, on "unclean hands," if Malibu Media or its principals have indeed committed a felony in failing to comply with Section 2257 for the titles at issue in this litigation, that would be a transgression "of serious proportions" that is directly related to the copyrighted works that are subject of the alleged infringement. *See Saxon v. Blann*, 968 F.2d 676, 680 (8th Cir. 1992) (as to the standard applied only). Further, Malibu Media should not now complain of being asked to verify compliance with Section 2257. Malibu Media invited the inquiry by moving beyond mere speech and into the realm of weaponizing its copyright registrations by affirmatively filing thousands of infringement suits nationwide (dozens in this district alone) for pornographic movies featuring young-looking girls.

Without yet having the benefit of any discovery on Section 2257 issues, some kinds of violations appear possible, if not likely. Malibu's principal Colette Field testified at the bellwether trial in Pennsylvania that Malibu Media apparently does not put Section 2257 notices at the start or in the end credits of its videos. [2] Bellwether Tr., p. 51:4–52:12. Instead, Malibu puts a link to Section 2257 records at the footer of its website. Arguably, this violates 28 C.F.R. 75.8(b)–(c), which requires that for "any film or videotape" the Section 2257 notice be located either at the end

---

[2] Ms. Field testified to this effect at the so-called bellwether trial before Judge Baylson in Pennsylvania. *Malibu Media, LLC v. John Does*, E.D. Pa. No. 2:12-cv-2078. The portion of the relevant transcript of Ms. Field's testimony on this issue was, surprisingly, offered Malibu as extrinsic evidence in support of its motion to dismiss defendant's counterclaims (similar to Malibu's same motion pending here) in *Malibu Media, LLC v. John Doe*, S.D. Cal. No. 13-435, ECF No. 19-2 ("Bellwether Tr."). A copy of the transcript excerpt filed by Malibu in California, from the bellwether trial in Pennsylvania, is attached hereto as Exhibit A.

of the end titles or final credits or "within one minute from the start of the film or videotape and before the opening scene." *Id.* Apparently, Malibu believes its films are exempt from those requirements and that it fully complies with the "location of statement" regulation by including a link to notices on the footer of the website, per 28 C.F.R. 75.8(d). If Malibu Media were suing people for unlawfully accessing its website, instead of alleging separate claims for copyright infringement for each of their different films/"vignettes", its chosen manner of compliance might be sufficient. Given its ongoing infringement litigation campaign, Malibu Media would certainly seem to be aware that their individual movies are appearing on BitTorrent, and other places beyond is own website, presumably without any kind of Section 2257 notice. In addition, one wonders whether Malibu Media's required notice remains visible if a visitor to the site clicks a link to expand/maximize a sexually explicit video such that the main website footer is no longer visible. The foregoing is by no means a complete account of Section 2257 issues with Malibu's various pornographic films that serve as the basis for these suits, but it shows that the topic is ripe for discovery, at the very least.

As for "[t]he defense of estoppel," professor Nimmer writes that it "is clearly available, if the plaintiff has aided the defendant in the acts of infringement, or has induced or caused the defendant to perform such acts." 4 Nimmer on Copyright § 13.07 *citing, inter alia*, *Coleman v. ESPN, Inc.*, 764 F. Supp. 290, 295 (S.D.N.Y. 1991). Here, defendant has alleged on information and belief that Malibu Media's computer forensic contractor, which has a history of running some kind of "honey pot" scheme in Germany, may have actually seeded or affirmatively encouraged the downloading of some of Malibu's content. Answer ¶¶ 17–19. That would clearly fall within the ambit of estoppel or implied license. Likewise, defendant also has a good faith basis to suggest

that the one satisfaction rule should be used to rein in duplicative statutory damage awards in BitTorrent "swarm" cases.

With respect to procedure, Malibu takes issue with defendant fleshing out certain of his key affirmative defenses with specific factual allegations in a counterclaim for a declaration that these defenses are meritorious. There are only two material differences between an affirmative defense and a counterclaim. First, a counterclaim necessarily requires a formal response from the other party. Second, and more importantly, a "defense cannot possibly be adjudicated separately from the plaintiff's claim to which it applies; a counterclaim can be." *Reiter v. Cooper*, 507 US 258, 265 (1993); *see also Katherine G. v. Kentfield Sch. Dist.*, 261 F Supp2d 1159, 1186 (N.D. Cal. 2003). Here, the particular affirmative defenses alleged would be relevant not just in this case, but in hundreds if not thousands of other Malibu Media cases nationwide, and could be tried separately. Particularly if Malibu Media seeks to dismiss this action without prejudice (as it often does), defendant would consider nevertheless pressing forward with these defenses, if it appears they are meritorious and Malibu is seeking to evade review. These affirmative defenses, as alleged, are the functional, copyright equivalent to a counterclaim for declaratory relief to invalidate a patent at issue in an infringement suit. Since they do not seek separate monetary relief (other than a declaration that Malibu should not be allowed to sue people on various theories and possible attorney's fees under the Copyright Act) there is no harm in leaving them as a counterclaim and defendant would ask the court to exercise its discretion to allow them to remain as such. Otherwise defendant would request that the counterclaim and related factual allegations simply be construed as part of the affirmative defenses, per Fed. R. Civ. Proc. 8(c)(2), but that plaintiff be ordered to respond to the factual allegations therein in a reply to the answer.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Malibu Media, LLC, together with its national plaintiff's counsel in Miami, has transformed itself from a small pornographic website business into a professional copyright infringement litigant, suing thousands of people nationwide. *See* Counterclaim ¶¶ 20–29.

Malibu Media filed the instant suits alleging copyright infringement of various pornographic movies, each against a single John Doe defendant identified only by an IP address. *See* Complaint. Plaintiff then sought and obtained leave to issue a subpoena to the relevant Internet Service Provider ("**ISP**") that assigned the IP addresses at issue. *See* Mtn. for Leave to Serve Third Party Subpoena. According to plaintiff's initial complaint, "Defendant's Internet Service Provider can identify the Defendant." Complaint ¶ 9.

After receiving the subpoenas, the ISP then notified the billing contact for the account where the allegedly infringing IP address had been assigned at the date and time in question, and this Internet subscriber retained undersigned counsel. Doe did not challenge the subpoena in this action (instead seeking leave to proceed anonymously). Accordingly, the ISP then made a return on the subpoena, identifying to Malibu Media the billing contact associated with the account that was assigned the IP address at issue at the time in question.

Apparently sure that the account billing contact identified by the ISP was the appropriate person to name and serve as a defendant, and without conducting any additional discovery, Malibu Media then filed an amended complaint naming the Doe account billing contact as the defendant. On behalf of Doe, undersigned counsel then waived service and filed an answer, which included both affirmative defenses, and a counterclaim seeking a declaratory judgment that certain of the affirmative defenses were meritorious. Answer to FAC and Counterclaim.

In response to the answer and counterclaim at issue here, and without bothering to attempt to meet and confer about anything, on December 5, 2013, Malibu filed one motion seeking to dismiss the counterclaim, and another seeking to strike defendant's affirmative defenses. Relying on mostly the same law, the motions to dismiss and motions to strike attack the procedural and substantive propriety of defendant's asserted affirmative defenses of: copyright misuse; estoppel; unclean hands; one satisfaction rule. ECF Nos. 30, 32. In addition, the motion to strike also attacks the substance of defendant's affirmative defenses for: license, failure to mitigate, and failure to join an indispensible party. ECF No. 32.

In a footnote to the motion to dismiss the counterclaim, Malibu Media noted that "Plaintiff intends to serve a motion for sanctions against Defendant pursuant to Rule 11 for making frivolous and entirely baseless allegations" and accused undersigned counsel of making certain allegations for an improper purpose and of engaging in "despicable" conduct. Motion to Dismiss, p. 2, fn. 1. To date, no such motion has been served, nor has Malibu Media attempted to meet and confer on any of the factual or legal assertions that it believes to be unfounded. *Id.* The same footnote also expresses Malibu's belief that defendant's factual assertions "are false because these issues were vetted during the trial," in the bellwether case before Judge Baylson in Pennsylvania. *Id.* To the extent this footnote aside is an argument that the issues asserted here by defendants are barred by *res judicata*, defendant heartily disagrees; the only defenses raised in the bellwether trial were basically white flags of surrender, and none of these issues were decided or necessary to the court's judgment there.

With respect to the factual allegations supporting the counterclaims and affirmative defenses that should be the focus in evaluating the instant motions, the defendant alleged:

**(a)** **Operative Allegations re: Section 2257**

Malibu Media makes pornographic movies that "feature young-looking people engaged in actual, graphic sexual intercourse" (Counterclaim ¶ 7) and is therefore subject to Section 2257 (*id.* at ¶ 8). Unlike many other smaller producers who use professional, third party custodians of records, Malibu attempts to comply with the requirements of Section 2257, which are complex and difficult, in-house. *Id.* at ¶¶ 9–11. Record keeping requirements for talent overseas is much less stringent (*id.* at ¶ 12), and the problem of talent or their representatives providing "incomplete, insufficient or even fake identity documents is particularly acute with female performers from former-Soviet-block countries, among other problem areas" (*id.* at ¶ 13). Some of Malibu Media's female on-screen sex workers are marketed as "teens," and a substantial number of them hail from former Soviet-block countries. *Id.* at ¶ 14. More specifically, defendant alleged on information and belief, that "Malibu has in the past attempted to skirt and ignore work visa requirements for foreign female performers it brought to the US to work on its pornographic film shoots occurring in Miami and Los Angeles." *Id.* at ¶ 15. Adding these facts together, defendant alleged on information and belief that "the Section 2257 records for certain of the pornographic movies at issue in the complaint in this action may be incomplete, deficient, or even fabricated." *Id.* at ¶ 16.

**(b)** **IPP and Guardaley**

Malibu Media's purported BitTorrent tracking expert, described variously as "IPP Limited and IPP International UG" is really nothing more than an alter-ego of a German company called Guardaley. *Id.* at ¶ 17. Guardaley was credibly accused in a German court of some kind of wrongdoing, essentially operating a "honey pot;" although defendant is not yet clear on the specifics, there are documents, in German, about the proceedings. *Id.* at ¶ 18. Defendant alleged

on information and belief "that IPP is responsible for initially seeding some of Malibu's content onto BitTorrent in the first place." *Id.* at ¶ 19.

**(c)** **Malibu Media's Ongoing Attempts to Receive Multiple Statutory Damage Awards, Presumably in Excess of $150,000, for "Swarm" Infringement Between Peers It Claimed Were Logically Related**

As this court is probably aware, before Malibu Media began filing single defendant suits, it routinely argued, both in this Court and around the country, that a series of peers using BitTorrent were logically related for the purposes of permissive joinder. *See, e.g., Malibu Media, LLC v. John Doe,* N.D. Ill. No. 1:12-cv-6675, ECF No. 87, 9/27/13 (Lee, J.) (order granting motion to sever). In view of Malibu's argument that the peers were logically related—and jointly and severally liable—for the purposes of joinder, the question becomes should the so-called "swarm" of peers also then be deemed related for the purpose of the limit on statutory damages under the one satisfaction rule? It is an interesting, and novel legal question. In order to illustrate this issue, defendant alleged some of the factual the history of Malibu's litigation efforts, explaining that Malibu routinely asserted alleged that "all of the peers in who were involved in downloading a given file as part of the same 'swarm,'[3] were jointly and severally liable for the resulting infringement." *Id.* at ¶ 21. Further, defendant alleged on information and belief that the particular computer file, the copyrights in suit, and even the IP address at issue have all been the subject of prior Malibu Media suits. *Id.* at ¶¶ 22–24. Defendant also alleged that Malibu Media has been collecting multiple settlements and statutory damage awards from other peers in the same swarm and from other defendants accused of being part of the same series of continuing infringement, all in excess of $150,000 per work. *Id.* at ¶ 27–29.

---

[3] In BitTorrent vernacular, "swarm" means the particular peers using the BitTorrent protocol who happen to be downloading the same particular file.

## III.  ARGUMENT IN OPPOSITION

**(a)     Legal Standards for Motions to Dismiss and Motions to Strike**

To survive a motion to dismiss, a complaint or counterclaim must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). The party bringing a motion to dismiss for failure to state a claim bears the burden of demonstrating that the other side has not met the pleading requirements of Fed R. Civ. P. 8(a)(2) in stating a claim.  *Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1165  (C.D. Cal. 2002). Ordinarily, dismissals for failure to state a claim under Rule 12(b)(6) should be without prejudice to the non-moving party's ability to file an amended pleading.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988). Dismissal without granting leave to amend is proper only in extraordinary cases.  *Broam v. Bogan*, 320 F3d 1023, 1028 (9th Cir. 2003).

Motions to strike are generally viewed with disfavor and are not frequently granted.  *Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 516-517 (N.D. Cal. 2004); *Bassiri v. Xerox Corp.*, 292 F. Supp. 2d 1212, 1220 (C.D. Cal. 2003). This is because of the limited importance of pleading in federal practice, and because motions to strike are often used as a delaying tactic.  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152  (C.D. Cal. 2003). Whether to grant a motion to strike lies within the sound discretion of the district court. In exercising its discretion, the court views the pleadings in the light most favorable to the nonmoving party.  *Bassiri*, 292 F. Supp. 2d at 1220; *Nelison*, 290 F. Supp. 2d at  1152.  A court should not grant a motion to strike unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Bassiri*, 292 F. Supp. 2d at 1220.  Motions to strike are limited to the grounds

specified in Rule 12(f), meaning that they may only be brought to cure "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. Proc. 12(f).

With respect to the designation of affirmative defenses and counterclaims, "If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."  Fed. R. Civ. Proc. 8 (c)(2).

**(b)      Provisions of Section 2257**

As relevant here, Section 2257 imposes requirements that producers of actual sexually explicit conduct "create and maintain individually identifiable records pertaining to every performer portrayed in such a visual depiction."  18 U.S.C. § 2257(a).  Any person who qualifies as a producer, must verify a performer's age, name, and any aliases, by examining her (or his) ID, as prescribed by regulations, and record the this information as prescribed by regulation. 18 U.S.C. § 2257(b).  The records must be available for inspection at all reasonable times. 18 U.S.C. § 2257(c).  In addition, any producer must affix to every copy of the sexually explicit work a statement indicating where the required records are maintained. 18 U.S.C. § 2257(e).

Subsection (f) makes it "unlawful" for any person covered by the statute to: (1) fail to create or maintain the required records; (2) knowingly make any false entry or fail to make an appropriate entry; (3) knowingly fail to comply with the record location statement of subsection (e); (4) sell any video (or other form of media) "which does not have affixed thereto," a statement describing where the records required may be located; and (5) refuse any inspection request by the Attorney General or his or her designee. 18 U.S.C. § 2257(f).

Subsection (g) authorizes the attorney general to issue appropriate regulations to carry out this statute (18 U.S.C. § 2257(g)), which were duly promulgated at 25 C.F.R. 78.  Subsection (i)

provides that "whoever violates this section shall be imprisoned for not more than 5 years, and fined in accordance with the provisions of this title, or both. Whoever violates this section after having been convicted of a violation punishable under this section shall be imprisoned for any period of years not more than 10 years but not less than 2 years, and fined in accordance with the provisions of this title, or both." 18 U.S.C. § 2257(i).

The regulation detailing where the required record keeping statement must appear on sexually explicit content, as required by 18 U.S.C. § 2257(e), provides, in its entirety,

"§ 75.8 Location of the statement.
(a) All books, magazines, and periodicals shall contain the statement required in § 75.6 or suggested in § 75.7 either on the first page that appears after the front cover or on the page on which copyright information appears.
(b) *In any film or videotape which contains end credits* for the production, direction, distribution, or other activity in connection with the film or videotape, *the statement* referred to in § 75.6 or § 75.7 *shall be presented at the end of the end titles or final credits* and shall be displayed for a sufficient duration to be capable of being read by the average viewer.
(c) *Any other film or videotape shall contain the required statement within one minute from the start of the film or videotape, and before the opening scene*, and shall display the statement for a sufficient duration to be read by the average viewer.
(d) *A computer site or service or Web address* containing a digitally- or computer-manipulated image, digital image, or picture *shall contain the required statement on every page of a Web site on which a visual depiction of an actual human being engaged in actual or simulated sexually explicit conduct appears*. Such computer site or service or Web address may choose to display the required statement in a separate window that opens upon the viewer's clicking or mousing-over a hypertext link that states, "18 U.S.C. 2257 [and/or 2257A, as appropriate] Record-Keeping Requirements Compliance Statement."
(e) For purpose of this section, a digital video disc (DVD) containing multiple depictions is a single matter for which the statement may be located in a single place covering all depictions on the DVD.
(f) For all other categories not otherwise mentioned in this section, the statement is to be prominently displayed consistent with the manner of display required for the aforementioned categories." 28 C.F.R. § 75.8 (emphasis added).

The foregoing record-keeping requirements of Section 2257, which are applicable to Malibu Media, have been the subject of spirited—although unsuccessful—challenges on free speech and other grounds by the adult industry. *See Free Speech Coalition, Inc. v. Holder*, 2013

U.S. Dist. LEXIS 100165 (E.D. Pa. July 18, 2013) (E.D. Pa. No. 2:09-cv-4607-MMB, ECF No.

229) ("*Free Speech Coal. II*") (Baylson, J.)[4] (memorandum reviewing history of current challenges

to Section 2257 and explaining final judgment in favor of government on all claims except one not

relevant here). However, in round one of the litigation challenging Section 2257, "the Court held

the [Section 2257] statutes and regulations were content-neutral and survived intermediate

scrutiny, because they are a narrowly tailored means for Congress to effectuate its goal of

combating child pornography". *Id.* at p. 3; *citing Free Speech Coalition, Inc. v. Holder,* 729 F.

Supp. 2d 691, 746 (E.D. Pa. 2010) ("*Free Speech Coal. I*") *aff'd in relevant part, rev'd in part by

Free Speech Coalition, Inc. v. Holder*, 677 F.3d 519, 533 (3d Cir. 2012) (holding that "the District

Court did not err in determining that the [Section 2257] Statutes were content neutral and that

intermediate scrutiny is applicable" but remanding to afford the plaintiffs the opportunity to

conduct discovery and develop the record regarding whether statutes were narrowly tailored). In

round two of the most recent challenge, after allowing discovery and considering the evidence

after trial, Judge Baylson held that Section 2257 was indeed narrowly tailored as applied to

plaintiffs, and that it was not facially overly broad as applied to the public in general. *Free Speech

Coal. II, supra*, at pp. 38–47.[5]

    In short, Section 2257 is a content-neutral restriction on speech that has been found to pass

First Amendment muster by the federal courts, because it is narrowly tailored to help prevent

sexual abuse of minors, which is obviously an important state interest. *Id.*

---

[4] Coincidentally, Judge Baylson also happens to have presided over Malibu Media's much ballyhooed "bellwether" trial, the only one of these cases, out of thousands, that Malibu Media or any similar plaintiff has ever taken all the way to a trial on the merits. See *Malibu Media, LLC v. John Does*, 2013 U.S. Dist. LEXIS 85687 (E.D. Pa. June 18, 2013) (E.D. Pa. No. 2:12-cv-2078, ECF No. 203).

[5] Judge Baylson's most recent, final decision in the Section 2257 litigation was appealed to the Third Circuit (USCA Appeal No. 13-03681) by the challengers to the statute, and cross-appealed by the U.S. Attorney General (USCA Appeal No. 13-3799) on the one issue the government lost.

**(c)     Malibu Media Has Failed to Meet its Burden of Showing the Total Implausibility of the Equitable Defenses Asserted by Defendant**

Admittedly, the notion that a pornographic film produced in violation of Section 2257 should be subject to one or more equitable defenses to copyright infringement on that basis is something of a novel argument.  However, Malibu Media has failed to cite any contradictory case law, or put forward any kind of convincing rationale as to why such a defense should not be recognized, *at least at this preliminary stage.*  It does seem clear, with all the threatening of Rule 11 sanctions, and the name calling directed at undersigned counsel, on top of the instant motions, that Malibu Media is anxious to try and avoid discovery on Section 2257.  In view of Ms. Field's testimony at the bellwether trial, proffered by Malibu in support of the instant motions (Bellwether Tr., pp. 51:4–52:12) wherein she seems to explain that Malibu does not actually affix the required notice before or after the company's movies, as required by 28 C.F.R. § 75.8(b)–(c), one can understand why.

Malibu Media bears the burden of persuasion on its motions, but it failed to raise the two most obvious arguments against allowing a Section 2257 defense. Malibu might have analogized defendant's proffered Section 2257 defense to the so-called 'obscenity defense' to copyright infringement, which has mainly been rejected in modern case law. *See Jartech, Inc. v. Clancy*, 666 F.2d 403 (9th Cir. 1982) (rejecting obscenity defense to infringement); *Mitchell Bros. Film Group v. Cinema Adult Theatre*, 604 F.2d 852, 863 (5th Cir. 1979) (lead case where Fifth Circuit rejected obscenity defense to copyright infringement under the 1909 Act) *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012) (citing *Jartech* and noting that "the prevailing view is that even illegality is not a bar to copyrightability"); *but see Martinetti v. Maguire*, 16 F. Cas. 920 (C.C.Cal. 1867) (No. 9,173) (California federal circuit precedent prior to creation of Ninth Circuit, never

expressly overruled, concluding that infringement occurred but denying protection to Broadway show, which featured the "exhibition of women 'lying about loose' or otherwise," because show was "grossly indecent, and calculated to corrupt the morals of the people" and hence uncopyrightable).  Malibu cites to *Jartech*, and *Mitchell Bros.*, (it ignores *Flava Works*, the relevant case on the Seventh Circuit) but fails to address the rejection of the obscenity defense.  Motion to Dismiss, fn. 3 and p. 7.

Similarly, Malibu might also have cited *Dream Games of Arizona, Inc. v. PC Onsite,* 561 F.3d 983, 990–94 (9th Cir. 2009), which dealt with the *use* of copyrighted video bingo machine in a manner that constituted illegal gambling in two states.  In that case, the Ninth Circuit held that illegal operation of a copyright product would not provide a defense to liability.  *Id.*

Malibu has waived these arguments by failing to raise them.

(1)  <u>The Section 2257 Defense Should Be Distinguished From Other Morality/Illegality Defenses That Have Been Rejected In The Past</u>

Three key points distinguish a Section 2257 defense to infringement from the failed 'obscenity defense' attempted in *Jartech*, and *Mitchell Bros.*, and from the failed 'illegal operation defense' in *Dream Games.*

First, the public interest safeguarded by Section 2257—preventing sex crimes against children—is substantially more important than the general public morals rationale for obscenity laws or rules against video gambling.

Second, a key reason the circuit courts refused to recognize an obscenity or illegal gambling defense to copyright infringement was that doing so would result in practical difficulties resulting from inconsistent application of the copyright law from state to state; however, a Section 2257 defense poses no such problem.  *See Jartech,* 666 F.2d at 406 ("Acceptance of an obscenity

- 20 -

defense would fragment copyright enforcement, protecting registered materials in a certain community, while, in effect, authorizing pirating in another locale"); *Mitchell Bros.*, 604 F.2d at 858 ("since what is obscene in one local community may be non-obscene protected speech in another . . .and the copyright statute does not in other respects vary in its applicability from locality to locality, Congress in enacting an obscenity exception would create the dilemma of choosing between using community standards that would (arguably unconstitutionally) fragment the uniform national standards of the copyright system and venturing into the uncharted waters of a national obscenity standard.") (internal citation omitted); *Dream Games*, 561 F.3d at 991 ("It would be absurd to deny a work the protection of a federal copyright because it is capable of illegal use in one or more states, but capable of perfectly legal use in other states."). By contrast, Section 2257 is a federal law, the application of which does not vary by state.

Third, the other justification for rejecting an obscenity defense to copyright infringement was that such a defense would pose "delicate First Amendment issues," (*Mitchell Bros.*, 604 F.2d at 858), but it has been repeatedly held that Section 2257 passes First Amendment muster (*Free Speech Coal. II, supra*, at pp. 38–47). When the Ninth Circuit rejected the illegal operation defense in *Dream Games*, it did so in part because "Sound policy reasons support the 'Congressional intent to avoid content restrictions on copyrightability.'" *Dream Games*, 561 F.3d at 991. But Section 2257 is a "content-neutral," and narrowly-tailored. *Free Speech Coal. I,* 729 F. Supp. 2d at 746 *aff'd in relevant part, rev'd in part by Free Speech Coalition, Inc. v. Holder*, 677 F.3d 519, 533 (3d Cir. 2012) (holding that "the District Court did not err in determining that the [Section 2257] Statutes were content neutral and that intermediate scrutiny is applicable"); *Free Speech Coal. II*, *supra*, at pp. 38–47 (holding after trial on remand that Section 2257 is narrowly-tailored and not facially overbroad).

(2)    The Section 2257 Defense Fits Under the Rubric of Unclean Hands, And/Or Copyright Misuse

Defendant does not seek to impose a prior restraint on Malibu's ability to go out and film pornographic movies that amount to "speech" rather than prostitution.  Nor do they seek damages for Section 2257 violations, as the statute has no private right of action.  Rather, defendant contends that if Malibu has unlawfully produced the copyrighted works at issue, then the court is within its discretion to allow an equitable, judicial defense to infringement based on Malibu's alleged wrongdoing.  However, the Section 2257 defense need not stand alone, it also fits under the rubric of other, better-known equitable defenses to copyright infringement.

(A)    *Unclean Hands: Section 2257 Violations Are Serious Transgressions Directly Related to the Copyrights In Suit*

The Ninth Circuit stated of this defense, "As Professor Nimmer has written, the defense of illegality or unclean hands is 'recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action. . . .'" *Dream Games*, 561 F.3d 990–91.  Here, if Malibu did indeed violate Section 2257, that would be a "serious transgression," since it is punishable by up to five years in prison, or ten for repeat offenses.  18 U.S.C. § 2257(i).  Further, the alleged transgression related directly to the subject matter of the infringement action; defendant only seeks to assert to the Section 2257 defense to the extent it is applicable to the copyrights in suit.  One Section 2257 violation on a movie not at issue would not necessarily establish the defense.

Malibu asserts that there is also a third requirement for unclean hands, that "plaintiff's conduct injured the defendant."  Motion to Dismiss, p. 6 *citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, Ltd., 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007) *quoting Survivor Productions LLC v. Fox Broadcasting Co.*, 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001). Even

assuming this is a hard requirement that does apply, defendant clears the bar because he is currently incurring special damage in the form of attorney's fees, to defend claims related to movies, some of which are alleged to have been illegally produced. *Cf. TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462 (1993) (plurality opinion) (affirming award of $10,000,000 in punitive damages where the only harm to defendants were in the nature of special damage attorney's fees, totaling a mere $19,000, to defend an improper legal action). Malibu does not suggest that there is a requirement that the kind of injury suffered by the defendant necessarily has to be the same kind of injury caused by plaintiff's wrongful conduct prohibited by statute.

In *Devils Films, Inc. v. Nectar Video*, 29 F. Supp. 2d 174 (S.D.N.Y. 1998) when a district court was asked to invoke its equitable powers to allow seizure of allegedly pirated copies of hardcore pornography, it invoked the doctrine of unclean hands and declined to do so. *Id.* The court deemed the movies at issue "obscene," noting it was "hard core pornography bereft of any plot and with very little dialogue." *Id.* at 175. After noting that the plaintiffs were transporting the obscene material in interstate commerce, which is a crime, the court explained, "Given the clearly criminal nature of plaintiff's operation, it is self-evident that ***the Court should*** not use its equitable power to come to plaintiff's assistance and should ***invoke the doctrine of unclean hands and leave the parties where it finds them***. *Dunlop-McCullen v. Local 1-S AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir.1998)." *Id.* at 176 (emphasis added). Accordingly, after reviewing the modern law of obscenity and copyright infringement, and concluded that it would not exercises its equitable powers to issue an order of seizure and preliminary injunction. *Id.* at 176–77.

Further, and as relevant on this Circuit, Judge Posner recently noted that aside from the issue of the copyrightability of an illegal work, there remains a "separate question, which is unresolved," as to "the applicability of the doctrine of *in pari delicto* (equally at fault)" which is

another name for unclean hands. *Flava Works,* 689 F.3d 756. As Judge Posner explained, "It could be argued that the courts shouldn't be bothered with a suit that, whichever side wins, will have been won by a wrongdoer." *Id.* However, the Seventh Circuit did not actually reach that issue in *Flava Works* because "there is no contention that any of Flava's videos are illegal." *Id.*

(B) <i>Copyright Misuse: The Public Policy Embodied In The Grant Of A Copyright Cannot Abide Monetization Of Child Pornography</i>

Although most typically applied in the anti-trust context, copyright misuse has also been invoked to deal with general public policy concerns. As Professor Nimmer has explained, "even absent the plaintiff's use of its copyright in violation of the antitrust laws, 'an equitable defense to an infringement action [might lie if] the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright.'" 4 Nimmer on Copyright § 13.09 *citing, inter alia, Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990); *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 521 (9th Cir.), *cert. denied*, 522 U.S. 933, 118 S. Ct. 339, 139 L. Ed. 2d 263 (1997) (following *Lasercomb*). Simply, the kind of artistic expression intended to be incentivized under the Copyright Act does not extend to promoting child pornography. Nor would such "speech" be protected under the First Amendment; it would be criminal.

(3)    <u>Defendant Also Raises Valid Defenses of Estoppel And/Or Implied License To The Extent Malibu's Agent IPP Was Involved In Seeding Or Facilitating The Download Of Plaintiff's Content On BitTorrent</u>

"The defense of estoppel is clearly available, if the plaintiff has aided the defendant in the acts of infringement, or has induced or caused the defendant to perform such acts." 4 Nimmer on Copyright § 13.07 *citing, inter alia, Coleman v. ESPN, Inc.*, 764 F. Supp. 290, 295 (S.D.N.Y. 1991). Here, defendant has alleged on information and belief that Malibu Media's computer forensic contractor, which has a history of running some kind of "honey pot" scheme in Germany,

- 24 -

may have actually seeded or affirmatively encouraged the downloading of some of Malibu's content.  Answer ¶¶ 17–19.  Malibu disputes that IPP and Guardaley are really one and the same, and claims that IPP is not engaged in a honey pot where IPP baits a BitTorrent trap by seeding Malibu's content and then watching who copies.  However, these are factual disputes, not appropriate for resolution on a 12(b)(6) or as part of a motion to strike.  The allegations in the Counterclaim are sufficient to give Malibu Notice of the legal theories and factual bases asserted. Defendant will undoubtedly be following up on the whole Guardaley episode in Germany, but sees no reason to put discovery on hold to re-plead the facts related to that incident, rather than simply taking a deposition of someone at IPP who can talk about the company's relations to the Guardaley debacle.

(4)    The One Satisfaction Issue Is A Limited Defense Capping Potential Statutory Damages; The Court Should Resolve The Issue After Discovery And Proper Motion By Defendant, Not By Dismissal

Defendant will consider raising the one satisfaction doctrine as a partial defense to statutory damages if the facts outlined in discovery suggest that such an argument is meritorious. This issue was included as an "affirmative defense" instead of brought as a damages motion later on in the case, to put Malibu Media on notice that it should be prepared to address the settlements and statutory damage awards (if any) it has received in similar cases involving peers it claims were logically related to the instant defendants.  This is a fascinating and novel legal issue, however defendant would contend, it is premature to get into the merits of how the one satisfaction rule should be adapted to the era of a BitTorrent "swarm" at this stage of the case.  Before getting into the issue in depth, defendant would prefer to ascertain through discovery if there actually are relevant, arguably related peers who have paid Malibu settlements for infringement of the same copyrighted files.

As a preview only, defendants notes that Professor Nimmer has explained that, "let us imagine that two or more persons are held jointly and severally liable for one or more infringements. Even if such persons are sued in separate actions, satisfaction of the judgment in the first action should constitute a defense to the second and succeeding actions. That conclusion follows, moreover, regardless whether a single work, or multiple copyrighted works, have thereby been infringed." 5 Nimmer on Copyright § 14.04 (citations omitted). Since Malibu Media routinely alleged in the past that participants in the same swarm were jointly and severally liable to one another, and since Section 504(c) refers to "infringers" not parties, there is an interesting argument to be made with respect the various people Malibu is suing who are all part of the same "swarm."

**(d)      The Affirmative Defenses Raised In The Counterclaim Could Be Tried Separately**

Much of the thrust of Malibu Media's motion to dismiss is focused on arguing why the counterclaim is really nothing more than affirmative defenses, and that the counterclaim should therefore be dismissed as repetitious and unnecessary. Motion to Dismiss, p. 2.

The Supreme Court has explained the difference between a counterclaim and an affirmative defense by stating that, a "defense cannot possibly be adjudicated separately from the plaintiff's claim to which it applies; a counterclaim can be." *Reiter v. Cooper*, 507 US 258, 265 (1993); *see also Katherine G. v. Kentfield Sch. Dist.*, 261 F Supp2d 1159, 1186 (N.D. Cal. 2003).

Here, the specific affirmative defenses included in the counterclaim were chosen specifically for that reason; even if Malibu Media attempts to dismiss this suit unilaterally, the Court has discretion to adjudicate these affirmative defenses separately. In this sense, the specific affirmative defenses raised in the counterclaim are like a patent counterclaim seeking to invalidate

a patent. This issue is firmly within the Court's sound discretion, and defendant would respectfully request that the counterclaim be left intact, and that Malibu Media be required to respond to it.

Alternatively, the relevant defenses and their corresponding factual predicates should not be dismissed, but simply construed as mere affirmative defenses, and that Malibu perhaps be ordered to reply to factual allegations in the answer, as so construed.

**(e)      None Of The Affirmative Defenses Should Be Stricken**

As distinguished from the motion to dismiss the counterclaim, Malibu Media's motions to strike do get into a few additional issues that are not also covered in the motions to dismiss.

Defendant's factual allegations supporting the implied license defense are detailed in section III(c)(3), supra.  This defense depends on whether Malibu Media's agent / BitTorrent tracker, IPP, intentionally provided a copy of the file to the defendant.  If so, this arguably constitutes an implied license, so this defense should not be stricken.

As to the failure to mitigate defense, as Malibu correctly notes, if it makes its election of statutory damages final, then this defense does become redundant.  However, lest Malibu Media try and change its mind later on, defendant would argue that the defense should remain at this stage of the case.

Finally, Malibu Media also challenges defendant's assertion of a defense for failure to join and indispensible party.  As to other peers in the swarm, Malibu appears to have a point on this issue.  However, defendant included this defense to preserve the argument in the event that the initial seeder of the content at issue turns about to be someone who is indispensible to affording relief or apportioning liability.

With the possible exception of failure to mitigate and failure to join an indispensible party, none of the affirmative defenses should be stricken.

## IV.  CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court deny Malibu Media's motions to strike defendant's counterclaims and strike certain of their affirmative defenses.  John Doe is asking this court to address the "separate question, which is unresolved" on this Circuit, as to whether an equitable defense may be raised to copyright infringement based on unclean hands, on the theory that violation of a content-neutral, narrowly-tailored criminal statute should not be rewarded by the Court.  *See Flava Works,* 689 F.3d 756.  In the alternative, if the court is inclined to dismiss the counterclaim, then defendant would request that the factual allegations asserted as part of the counterclaim be construed as part of the affirmative defenses.

Respectfully submitted,

DATED:     January 22, 2014

THE PIETZ LAW FIRM

*/s/ Morgan E. Pietz*

Morgan E. Pietz (Cal. Bar No. 260629)
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:    (310) 424-5557
Facsimile:    (310) 546-5301

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using ECF, which will send notification of such filing to all attorneys of record.

DATED:     January 22, 2014          */s/ Morgan E. Pietz*
                                              Morgan E. Pietz

- 28 -