## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 13 C 3648** |
| | ) | |
| **JOHN DOE, subscriber assigned IP** | ) | |
| **address 24.14.139.173,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Plaintiff Malibu Media LLC has filed a copyright infringement suit against

defendant John Doe,[1] who is identified only by his use of the IP address 24.14.139.173.

Doe has asserted nineteen affirmative defenses and a counterclaim for declaratory

relief. Malibu Media has moved to dismiss the counterclaim and to strike eight of the

affirmative defenses. For the reasons stated below, the Court dismisses Doe's

counterclaim and strikes all but two of the disputed defenses.

### Background

The Court takes the following facts from Malibu's complaint, indicating which

facts are and are not disputed. Malibu is a California-based company that creates and

distributes adult films. Doe contends that the company also creates and distributes

child pornography as that term is defined in certain federal statutes, or at least that it

---

[1] Doe's gender is unknown to the Court. The Court will refer to Doe as "he," as the parties have in their briefs.

fails to comply with certain federal statutory requirements geared toward preventing the production and distribution of child pornography.

BitTorrent is an online venue for peer-to-peer sharing of large amounts of data, including digital video files. According to Malibu, "[e]ach bit of a BitTorrent file is assigned a unique cryptographic hash value" which "acts as that bit's unique digital fingerprint." Compl. ¶ 14. Doe disagrees, stating that "[i]t is possible (although rare) for two unrelated pieces to have an identical cryptographic hash value, as a matter of pure coincidence." Answer ¶ 15.

Malibu says that at a date not identified in the complaint, its retained investigator, IPP Limited, established a TCP/IP connection with Doe and downloaded one or more bits of various digital media files from him. All of the bits, Malibu alleges, belong to copyrighted films that it owns. Malibu alleges that IPP was able to confirm that it had downloaded Malibu's copyrighted content from Doe. Malibu further alleges that "[a]t no time did IPP Limited upload Plaintiff's copyrighted content to any other BitTorrent user." Compl. ¶ 20.

Malibu has sued Doe for direct copyright infringement. It requests statutory damages of $150,000 per infringed work pursuant to 17 U.S.C. § 504(a) and (c). Malibu also alleges that Doe is distributing its copyrighted films via BitTorrent. Malibu bases this allegation on the fact that Doe pays the bill for Internet service associated with an IP address that is being used to distribute the movies.

As indicated earlier, Doe's answer to Malibu's complaint includes nineteen affirmative defenses, and he has also asserted a counterclaim for declaratory relief. In his counterclaim, Doe seeks a determination that his affirmative defenses are

meritorious and that he is not liable to Malibu for copyright infringement.  He does not

seek damages.  Malibu has moved to dismiss the counterclaim pursuant to Federal

Rule of Civil Procedure 12(b)(6) and to strike eight of Doe's affirmative defenses

pursuant to Rule 12(f), specifically, defenses 1, 2, 3, 4, 5, 8, 17, and 19.

### Discussion

In considering Malibu's motion to dismiss Doe's counterclaim, the court "accept[s]

all well pleaded allegations in the counterclaim as true and draw[s] all reasonable

inferences in favor of the counterclaim plaintiff." *Cozzi Iron & Metal, Inc. v. U.S. Office

Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).  "If the allegations in a complaint do not

'state a claim to relief that is plausible on its face,' the claim cannot survive a motion to

dismiss." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 747 F.3d 470, 480 (7th Cir. 2014)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A court may strike an affirmative defense if it is legally insufficient on its face.

*See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).  The

standard for deciding a motion to strike an affirmative defense is effectively the same as

the standard for a motion to dismiss a complaint for failure to state a claim.  *See, e.g.,

Renalds v. S.R.G. Restaurant Grp., Chicago, LLC*, 119 F. Supp. 2d 800, 802-03 (N.D.

Ill. 2000).  Doe therefore must make factual allegations sufficient to raise the asserted

defenses above the "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  The Court accepts the allegations in the affirmative defenses as true and

considers them in the light most favorable to Doe.  *Id.* at 572.

The Court addresses Doe's counterclaim first and then addresses each of the

disputed affirmative defenses.

## A.    *Counterclaim*.

Doe's counterclaim seeks no affirmative relief other than a determination that his affirmative defenses are meritorious and that he is not liable to Malibu for copyright infringement.  As such, it is not appropriately a counterclaim.  *See Rayman v. Peoples Sav. Corp.*, 735 F. Supp. 842, 852 (N.D. Ill. 1990) (citing *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985), and *Green Bay Packaging, Inc. v. Hoganson & Assocs., Inc.*, 362 F. Supp. 78 (N.D. Ill. 1973), for the proposition that what is actually a defense to a suit does not become an independent claim based on its relabeling).  The Court therefore dismisses Doe's counterclaim.

## B.    *Affirmative defenses*.[2]

1.    *Copyright misuse.*  The doctrine of copyright misuse 'prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly."  *Assessment Tech. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003) (quoting *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026–27 (9th Cir. 2001)).  This is not what Doe alleges in support of his first affirmative defense. First, he contends that "Malibu has made a business model out of pornographic copyright infringement litigation . . . [and] has been systematically suing John Doe defendants for infringement, and then seeking settlements, on a scale seldom seen in the history of federal litigation."  Countercl. ¶ 26.  Second, Doe maintains that IPP Limited has itself seeded Malibu's content onto BitTorrent and has thus enabled and encouraged the very copyright infringement of which it complains.  *Id.* ¶¶ 18-19.

---

[2] Doe incorporates the allegations of his counterclaim into his defenses, so the Court's citations in this section of its decision will be to the counterclaim.

The Court has a hard time seeing how the former allegation involves "misuse" of Malibu's copyrights. It is certainly true that Malibu has filed a very large number of infringement suits in this district and in others. But that is what the holders of intellectual property rights do when they are faced with mass infringement. Courts in this district and elsewhere frequently get, for example, lawsuits by trademark owners against multiple websites that sell counterfeited products bearing the trademark owners' marks. By way of example, a review of the index of this district's filings reflects that Coach, Inc. which produces handbags, accessories, footwear, clothing, etc. bearing the company's trademarks, has filed 57 lawsuits in this district alone within the past four years, many of them naming dozens and indeed hundreds of entities as defendants. And a search of this district's index for suits naming "The Partnerships and Unincorporated Associations Identified on Schedule A," a term commonly used by trademark holders to sue multiple websites selling counterfeit products, reveals over 75 such lawsuits in the past year alone by various trademark holders. As best as the Court can determine, not one of these has led to criticism of the intellectual property right holder for misusing its trademark, let alone to dismissal of a case for that reason. Presumably the reason is that although cases involving the doctrine of copyright misuse refer to suing on a copyright "hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively," *Assessment Techs. of WI*, 350 F.3d at 647, the predicate for a misuse defense is an attempt to use the copyright monopoly to control something the monopoly does not protect. That element is missing from Doe's affirmative defense. The Court is hard-pressed to see why Malibu Media's large-volume litigation should be treated differently

from that of Coach or other intellectual property rights holders simply because Malibu's intellectual property rights involve pornographic films. (The question of the claimed illegality of Malibu's films and its effect on copyright protection is addressed in a separate defense.)

Doe's allegation that Malibu is itself "seeding" its copyrighted content onto BitTorrent sites and in effect encouraging its distribution there might give rise to a separate affirmative defense, a topic the Court addresses below, but it does not give rise to a defense of copyright misuse given the way the Seventh Circuit has defined that term.

For these reasons, the Court strikes Doe's first affirmative defense.

2. *Estoppel.* The Court likewise strikes Doe's second affirmative defense, in which he alleges estoppel based on his contention that Malibu or its agents have seeded Malibu's own content onto BitTorrent sites, where it is readily available for downloading. "For estoppel to apply in a copyright action, the copyright owner must be aware of the infringing conduct and yet act in a way that induces the infringer reasonably to rely upon such action to his detriment." *Chi–Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1228 (7th Cir. 1991). Doe does not allege that Malibu did anything that misled him to believe that the conduct constituting the alleged infringement was legal or condoned by Malibu. Doe does not contend that he was aware of the alleged seeding by an agent of Malibu. Countercl. ¶ 18 ("Doe is not clear on the specifics of Guardaley's wrongdoing or what the court specifically found, but is aware that there are documents, in German, relating to this issue."). And there is no basis to believe that the mere availability of Malibu's content on BitTorrent would have given Doe the impression

that the content was unprotected by copyright law or that its downloading and

redistribution was legal.

3.  *Unclean hands.*  "The point [of the unclean hands doctrine] is . . . that a

court will not adjudicate a case if a judgment for the plaintiff would encourage or reward

criminal or other unlawful activity."  *Schlueter v. Latek*, 683 F.3d 350, 355 (7th Cir.

2012).  Doe alleges that Malibu has violated federal statutory and regulatory

recordkeeping requirements whose purpose is to enforce legal prohibitions against

production of child pornography.

Specifically, Doe cites 18 U.S.C. § 2257, which requires anyone who produces

(among other things) films of a person engaged in "sexually explicit conduct" to "create

and maintain individually identifiable records pertaining to every performer portrayed in

such a visual depiction."  *Id.* § 2257(a).  The statute also requires the person or entity

that produces the film to do the following "with respect to every performer portrayed in a

visual depiction of actual sexually explicit conduct":

> (1) ascertain, by examination of an identification document containing
> such information, the performer's name and date of birth, and require the
> performer to provide such other indicia of his or her identity as may be
> prescribed by regulations;
>
> (2) ascertain any name, other than the performer's present and correct
> name, ever used by the performer including maiden name, alias,
> nickname, stage, or professional name; and
>
> (3) record in the records required by subsection (a) the information
> required by paragraphs (1) and (2) of this subsection and such other
> identifying information as may be prescribed by regulation.

*Id.* § 2257(b).

Doe contends that Malibu keeps incomplete, deficient, or fabricated records of

the performers in its works.  He suggests that at least some of the performers in

Malibu's works are underage and that the copyrighted content at issue in the case constitutes child pornography as federal law defines that term. Doe also alleges that Malibu does not place at the start and end of its films section 2257 compliance notices that are required by regulation. Doe contends that "[i]f any of the sexually explicit films featuring young-looking girls at issue here . . . were feloniously produced in violation of the strict record-keeping requirements of 18 U.S.C. § 2257. . . then the Court should not enforce copyright monopolies for such films." Def.'s Resp. at 6-7.

The Seventh Circuit has indicated—though it has not squarely held—that "the prevailing view is that even illegality is not a bar to copyrightability." *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012). In that case, however, the court was discussing obscene works, not child pornography. The primary case the court cited for the point, *Jartech, Inc. v. Clancy*, 666 F.3d 403 (9th Cir. 1982), noted that "[p]ragmatism . . . compels a rejection of an obscenity defense." *Id.* at 406. The court noted that under Supreme Court precedent, "obscenity is a community standard which may vary" and that "[a]cceptance of an obscenity defense would fragment copyright enforcement, protecting registered materials in a certain community, while, in effect, authorizing pirating in another locale." *Id.*

That consideration does not apply to child pornography, the production and distribution of which is prohibited by federal law—a single, national standard. Section 2257, which is part of federal child pornography prohibition's enforcement mechanism, is likewise a nationally-applicable requirement. Thus the practical consideration noted in *Jartech* does not apply; there is no risk of fragmented or differential enforcement. The Court understands the considerations that counsel against imposing a non-

statutory, equitable barrier to copyright enforcement.  *See generally Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 861-63 (5th Cir. 1979).  That said, the Court is not prepared to say that federal copyright law would permit one who has produced child pornography—which cannot be legally produced or distributed anywhere in the United States—or who has failed to comply with federally-mandated requirements aimed to deter production of child pornography to enforce a copyright relating to such material.  The Court therefore declines to strike Doe's third unclean hands defense and leaves for another day the question of whether it is a legally viable defense.

The Court notes that assuming the defense is legally viable, it will require Doe to establish that Malibu has violated the law with respect to one or more of the particular films that are the subject of its copyright infringement claims.  "[U]nclean hands doctrine closes the door of a court of equity to one tainted with inequitableness or bad faith *relative to the matter in which he seeks relief . . . .*"  *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 329-330 (1994) (internal quotations omitted) (emphasis added); *see also, e.g., JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 585 (6th Cir. 2007) (allegations of misconduct that do not concern the cause of action before the court do not give rise to unclean hands defense).

4.    *Implied license.*   Doe contends that an agent of Malibu, either IPP or an entity called Guardaley, "seeded" Malibu's content onto BitTorrent and thereby invited others to download it.  He alleges that this amounted to an implied license, precluding a claim of infringement.  Malibu denies that any such seeding occurred, but the factual accuracy of Doe's allegation cannot be resolved on a motion to strike.

A non-exclusive license may be implied by the conduct of the copyright holder. *See, e.g., I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 n.9 (7th Cir. 1996). Malibu says that Doe cannot meet the requirements for establishing an implied license. It relies upon, among other cases, *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690 (7th Cir. 1999, in which the Seventh Circuit stated that "[a] n implied license has been granted when (1) the licensee requests the creation of a work; (2) the licensor creates the work and delivers it to the licensee who asked for it; and (3) the licensor intends that the licensee copy and distribute the work." *Id.* at 694. Because there is no allegation that Doe requested creation of the work and thus no meeting of the minds, Malibu argues, the requirements for an implied license are not met. *See* Pl.'s Mot. to Strike at 7.

It does not appear to the Court that the three-part test referenced in *Kennedy* and *I.A.E., Inc.* describes the only way to establish an implied license. In *Baisden v. I'm Ready Prod., Inc.*, 693 F.3d 491 (5th Cir. 2012), for example, the Fifth Circuit indicated that all that is needed to show an implied license is that the "totality of the parties' conduct indicate[d] an intent to grant such permission." *Id.* at 501 (internal quotation marks omitted). In addition, the Seventh Circuit stated in *I.A.E., Inc.* that relevant intent "is not the parties' subjective intent but their outward manifestation of it." 74 F.3d at 777.

At this stage of the proceedings, the Court is unprepared to rule out the possibility that Doe can establish an implied license defense based on "seeding" by Malibu onto BitTorrent of the particular films upon which its claim against Doe is based..

5. *Single satisfaction rule.* The copyright statute permits a copyright holder to elect an award of statutory damages instead of actual damages and profits. 17

10

U.S.C. § 504(c). There is nothing in the statute or any case of which the Court is aware that would limit Malibu from recovering multiple statutory damage awards from multiple infringers of the same copyrighted work. Though recoveries from others might conceivably be a factor to consider in determining the amount of a statutory damages award, that is not a basis to dismiss Malibu's claim against Doe.

8. *Failure to mitigate damages.* Doe concedes that Malibu's election of statutory damages eliminates failure to mitigate as a viable defense. The Court therefore strikes Doe's eighth affirmative defense.

17. *Insufficient legal process.* Doe has abandoned his defense of insufficient legal process by failing to respond to this aspect of Malibu's motion to strike.

19. *Failure to join an indispensable party.* Doe has conceded Malibu's contention that it is not required to join joint tortfeasors in a single case.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion to dismiss defendant's counterclaim [dkt. no. 30] and grants in part plaintiff's motion to strike certain affirmative defenses [dkt. no. 32]. Specifically, the Court strikes affirmative defenses 1, 2, 5, 8, 17, and 19 but declines to strike defenses 3 and 4. The case is set for a telephone status hearing on June 19, 2014 at 9:00 a.m., for the purpose of setting a schedule for discovery. Plaintiff's counsel is to get defendant's counsel on the telephone and then call chambers (312-435-5618). Counsel are directed to confer in advance of the hearing to attempt to agree on a schedule to propose to the Court.

_____
MATTHEW F. KENNELLY
Date: June 9, 2014                              United States District Judge